UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
BRITTANY ROMANO,

                              Plaintiff,                                    **Case No.** _____

                      -against-

                                                                           **COMPLAINT**

A360 MEDIA, LLC, f/k/a AMERICAN MEDIA, INC.
ELI LIPPMAN, SPENCER CAIN and NADINE DENINNO
 in their individual and professional capacities,

                              Defendants.                                  **Jury Trial Demanded**
------------------------------------------------------------------------X

        BRITTANY ROMANO, ("Plaintiff"), by and through her attorneys, BERLINGIERI

LAW, PLLC, as and for her Complaint against A360 MEDIA, LLC, formerly known as [f/k/a]

AMERICAN MEDIA, INC. ["AMI"], now referred to as ("A360"), ELI LIPPMAN,

("LIPPMAN"), SPENCER CAIN ("CAIN") and NADINE DENINNO ("DENINNO"), (together,

where appropriate, as "Defendants"), alleges upon knowledge as to herself and her own actions

and upon information and belief as to all other matters as follows:

## NATURE OF THE CASE

        1.      This is a civil action for damages and equitable relief based upon willful violations

that Defendants committed of Plaintiff's rights guaranteed to her by: (i) Title VII of the Civil

Rights Act of 1964, as codified, 42 U.S.C.§§ 2000e to 2000e-17 as amended ("Title VII") *et

seq*.; (ii) retaliation under the Title VII, (iii) disability discrimination under  the Americans with

Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101, et seq. ("ADA"), (iv) retaliation

under ADA (v) gender and disability discrimination under New York State Human Rights Law

("NYSHRL"), Art. 15 Executive Law Sec. 296 *et seq.;* (vi) retaliation under NYSHRL; (vii)

aiding and abetting discrimination under NYSHRL (viii) discrimination based on gender and

1

disability under the New York City Human Rights Law ("CHRL") § 8-107 *et seq.*, New York City Admin. Code, Ch. 1 - § 8-107; (ix) retaliation under CHRL; (x) aiding and abetting discrimination under CHRL; (xi) interference with rights under CHRL; (xii) supervisory liability under CHRL 8-107(13); (xiii) New York Labor Law ("NYLL"), NYLL § 195(1), the requirement that employers furnish employees with a wage notice at hire containing specific categories of accurate information; *the following causes of action are as to defendant <u>Nadine DeNinno Only</u>* (xiv) defamation (slander *per se*); (xv) tortious interference with a prospective business opportunity; (xvi) intentional interference with a contractual relation; (xvii) *prima facie* tort; and, (xviii) any other claims(s) that can be inferred from the facts set forth herein.

**JURISDICTION AND VENUE**

2.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 42 U.S.C. §§ 2000e et seq, and 42 U.S.C. §§ 12101, et seq. The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all claims arising under New York State and New York City law.

3.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims for relief occurred within this judicial district. Costs, expert witness fees and attorney's fees are sought pursuant to 42 U.S.C. § 1988.

4.      Plaintiff filed timely claims with the Equal Employment Opportunity Commission ("EEOC") (Federal Charge No. 520-2020-02343), against AMI only.

5.      On July 30, 2020 the Equal Employment Opportunity Commission ("EEOC"), issued Plaintiff a Notice of Right to Sue as to AMI annexed hereto as **Exhibit A**.

## PARTIES

6.     At all relevant times Plaintiff was and is a resident of the State of New York, County of New York.

7.     At all relevant times herein, Plaintiff worked for Defendants in New York and was an "employee" entitled to protection as defined by Title VII, ADA, NYSHRL, CHRL and NYLL.

8.     At all relevant times herein, Defendant AC 360 f/k/a AMI, is a limited liability company formed under the laws of Delaware with a New York City based headquarters address located at 4 New York Plaza, Second Floor, New York, NY 10004. In or about August 2020, AC 360 was formed by the merger of AMI and its parent company Accelerate 360, LLC, (Georgia based). Currently AC 360 maintains the same address formerly occupied by AMI at 4 New York Plaza, Second Floor, New York, NY 10004, and maintains offices at 1955 Lake Park Drive, Suite 400, Smyrna, GA 30080.

9.     At all relevant times herein, Defendant Eli Lippman was and is a resident of the State of California and was a Director at AMI now AC360, Mr. Lipmann has a work address located at 4 New York Plaza, Second Floor, New York, NY 10004.

10.     At all relevant times herein, Defendant Spencer Cain was and is a resident of the State of New York and was a manager at AMI now AC360, Mr. Cain has a work address located at 4 New York Plaza, Second Floor, New York, NY 10004.

11.     At all relevant times herein, Defendant Nadine DeNinno was and is a resident of the State of New York and was a manager (E-Commerce Editor) at AMI, but then left in 2019 to work at the New York Post, Ms. DeNinno maintains a work address at 1211 Avenue of the

Americas, New York, NY 10036.

## **BACKGROUND FACTS**

12.     Plaintiff's gender/sex is female and she suffers from a learning disability, attention deficit hyper disorder ("ADHD") and dyslexia.

13.     On or about January 15, 2019, Plaintiff began her employment as a commerce writer at AMI.

14.     Shortly after hire at AMI, Plaintiff disclosed her ADHD to Defendant DeNinno, who at the time was Plaintiff's manager.

15.     Defendant DeNinno treated Plaintiff differently on the basis of her ADHD.

16.     Plaintiff and at least 2 other female employees complained to AMI human resources ("HR") about Defendant DeNinno's abusive and toxic management style in or about May 2019.

17.     For example, Defendant DeNinno ostracized Plaintiff and screamed at her in front of coworkers on the basis of her disability and other things related to work.

18.     Defendant DeNinno made Plaintiff feel like she was being disciplined publicly for non-events and for miniscule work matters in front of her co-workers.

19.     Defendant DeNinno failed to regularly communicate with Plaintiff regarding work issues, despite Defendant DeNinno's promises that she would promptly communicate.

20.     After Plaintiff complained to HR about Defendant DeNinno, Defendant DeNinno retaliated immediately by deleting Plaintiff and her close co-worker's "Slack" or instant messaging service that contained important information about their work.

21.     Defendant DeNinno also refused to speak with Plaintiff and her team after the

HR complaint.

22.     Shortly after the HR complaint Defendant DeNinno departed AMI to work for the New York Post ("the Post") commencing in or about September 2019.

23.     In or around mid-September 2019, Defendant Cain assumed the supervisory duties formerly held by Defendant DeNinno, including management of Plaintiff and her team.

24.     Defendant Lippman (gender/sex male) was based in California and never came to the NYC office, except for 2 occasions per year.

25.     Defendant Lippman treated Plaintiff differently based on her sex and disability.

26.     Defendant Lippman assigned duties to Plaintiff that were inconsistent with her job title and forced her to do "numbers" and "copy and paste" content on the website for and AMI publications such as "Us Weekly" instead of writing her own articles as she had previously done for AMI throughout her entire employment with AMI up until that point.

27.     Upon hire, Plaintiff wrote her own original content for prior to Defendant Lippman forcing Plaintiff to stop that practice and simply copy and paste instead.

28.     Defendant Lippman wanted Plaintiff to only copy and paste for 8 hours per day.

29.     Defendant Lippman would ask Plaintiff personal questions about her friends, social life, and personal plans in NYC she had during the weekends. Plaintiff felt uncomfortable by Defendant Lippman's questions and believed he was asking her these questions due to her sex/gender.

30.     Plaintiff complained to Defendant Lippman, for relief from his onerous requests, citing Plaintiff's ADHD as a reason why she could not easily perform the copy and paste and numbers functions as requested, also citing that this was outside her job description and that she was hired to be a writer and content creator not a copy and paster.

31.    Plaintiff complained to Defendant Cain and requested a reasonable accommodation, so that she could work effectively.

32.    Defendant Lippman failed to engage in the interactive process with Plaintiff regarding her request for accommodations based on her ADHD.

33.    Specifically, on or about January 21 - 27 2020, Plaintiff made my requests about reasonable accommodations, but instead of letting Plaintiff simply write articles, Defendant Lippman demanded that Plaintiff copy and paste, without even hearing her out and or engaging in an interactive process with her.

34.    Defendant AMI changed Plaintiff's "by-line" to "admin" thereby depriving her of her status as a "writer" as she was hired to be a writer and not simply administrative.

35.    Defendant AMI forced Plaintiff to perform menial copy and paste tasks instead of her core duties as a writer.

36.    As a backdrop, Plaintiff had an overall terrible experience at AMI, due to the sexist, all boy club culture throughout the company.

Specifically, on or about February 4, 2020, Plaintiff filed a charge with the EEOC regarding retaliation, disability, and sex discrimination against AMI.

37.    On or about March 2, 2020, AMI terminated Plaintiff in retaliation for her filing her EEOC charge, complaining about management and requesting a reasonable accommodation.

38.    Defendant AMI informed Plaintiff that Plaintiff's termination was due to layoffs, however, no other person in Plaintiff's department was terminated during the so-called "layoffs", but Plaintiff. Making matters even worse, the metrics show that Plaintiff and her department were top revenue generators for AMI.

39.    AMI's proffered reason for termination is pretextual.

40.     Plaintiff was targeted for making requests for accommodations and disability.

41.     As if Plaintiff did not suffer enough at the hands of AMI, her legacy of requesting reasonable accommodations and complaining about managers at AMI would continue to haunt her in the media industry in New York City.

42.     At the prior urging of Defendant DeNinno, Plaintiff applied for a position at the Post in or around late September 2020.

43.     On or about October 1, 2020, the Post extended a job offer to Plaintiff in the digital media department as a "Commerce Journalist".

44.     Plaintiff accepted said job offer from the Post.

45.     As Defendant DeNinno held the position of Associate Digital Editor at the Post and would have managed Plaintiff, in a department headed by Rob Bailey-Millado.

46.     On or about October 2, 2020, the Post rescinded said job offer, due to an "internal reference", upon information and belief from Defendant DeNinno.

47.     Upon information and belief from Defendant DeNinno, on or about October 1, 2020, Defendant DeNinno made false statements about Plaintiff's professional ability including but not limited to her experiences with Plaintiff at AMI.

48.     Upon information and belief from Defendant DeNinno made comments to the Post that distorted the truth about and claimed that Plaintiff was unfit to work at the Post and that Plaintiff did not have the ability and character to work at the Post and was not professional enough to work at the Post, among other things.

49.     Upon information and belief from Defendant DeNinno mentioned to the Post that Plaintiff suffered from ADHD and complained about her AMI and eventually filed a charge with to the EEOC against AMI.

50. Upon information and belief, the Post rescinded Plaintiff's offer solely on the false statements of Defendant DeNinno, categorized by the Post as an internal reference.

51. Upon information and belief from Defendant DeNinno did not want Plaintiff to advance her career and work at the Post, despite earlier telling Plaintiff and her former co-worker to apply at the Post via text message.

52. Upon information and belief from Defendant DeNinno interfered with Plaintiff's employment with the Post and her prospective ability to earn an income with the Post.

53. Upon information and belief from News Corp. owns the Post.

54. Plaintiff suffered extreme emotional distress after Defendants' retaliatory actions.

55. Defendant AMI failed to provide Plaintiff with a wage notice as proscribed by New York Labor Law section 195-1.

56. Plaintiff never received a lunch break at AMI.

**AS A FIRST CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER TITLE VII**
**(Not against any individual Defendants)**

57. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

58. Title VII states in relevant part as follows: SEC. 2000e-2. [Section 703] (a) Employer practices: It shall be an unlawful employment practice for an employer - (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; . . .

59. Defendant A360 engaged in unlawful employment practices prohibited by 42

U.S.C. §2000e et seq., by allowing, sex/gender discrimination, discrimination and causing a hostile work environment.

60.    Defendant A360 violated the above and Plaintiff suffered numerous damages as a result.

**AS A SECOND CAUSE OF ACTION
FOR RETALIATION UNDER TITLE VII.
(Not against any individual Defendants)**

61.    Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if the same were set forth herein fully at length.

62.    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of her employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

63.    The employer Defendants engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e et seq. by retaliating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of the employer Defendants.

64.    The employer Defendants violated the above and Plaintiff suffered numerous damages as a result.

65.    Defendant A360 unlawfully interfered, restrained, and denied Plaintiff's right to exercise and attempt to exercise her rights under the above section and discriminated and retaliated against Plaintiff by terminating Plaintiff from her employment for opposing Defendant's unlawful employment practice and attempting to exercise her rights.

9

**AS A THIRD CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**THE AMERICANS WITH DISABILITIES ACT**
**(Not against any individual Defendants)**

66.    Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

67.    Plaintiff claims Defendant A360 violated Title I of the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (ADA), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

68.    SEC. 12112. [Section 102] specifically states "(a) General Rule. - No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

69.    Defendant A360 violated the section cited herein by failing to consider Plaintiff's requests for a reasonable accommodation, as well as discharging, creating and maintaining discriminatory working conditions, and otherwise discriminating and retaliating against the Plaintiff because of her sex, disability and for having complained of discrimination.

70.    Defendant A360 violated the above and Plaintiff suffered numerous damages as a result.

**AS A FOURTH CAUSE OF ACTION
FOR RETALIATION UNDER
THE AMERICANS WITH DISABILITIES ACT
(Not against any individual Defendants)**

71. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

72. SEC. 12203. [Section 503] states, "(a) Retaliation. - No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

73. Defendant A360 violated the above and Plaintiff suffered numerous damages as a result.

**AS A FIFTH CAUSE OF ACTION
FOR DISCRIMINATION UNDER
NEW YORK STATE LAW
(AGAINST ALL DEFENDANTS)**

81. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

82. Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

83. Defendants engaged in an unlawful discriminatory practice by discriminating

against the Plaintiff because of her sex, disability, and causing a hostile work environment.

84. Plaintiff hereby makes a claim against Defendant s under all of the applicable paragraphs of Executive Law Section 296.

**AS A SIXTH CAUSE OF ACTION**
**FOR RETALIATION UNDER**
**NEW YORK STATE LAW**
**(AGAINST ALL DEFENDANTS)**

85.     Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

86. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

87. Defendants engaged in an unlawful discriminatory practice by wrongfully retaliating against Plaintiff.

**AS A SEVENTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**NEW YORK STATE LAW**
**(AGAINST ALL DEFENDANTS)**

88.     Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of the complaint.

89.     New York State Executive Law §296(6) further provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

90.     Defendants engaged in an unlawful discriminatory practice by aiding, abetting, compelling and/or coercing the discriminatory behavior as stated herein.

12

**AS AN EIGHTH CAUSE OF ACTION
FOR DISCRIMINATION UNDER
THE NEW YORK CITY ADMINISTRATIVE CODE
(AGAINST ALL DEFENDANTS)**

91.     Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

92.     The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

93.     Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, by creating and maintaining discriminatory working conditions and a hostile work environment, and otherwise discriminating against the Plaintiff because of Plaintiff's disability.

94.     Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York City Administrative Code Title 8.

**AS A NINTH CAUSE OF ACTION
FOR RETALIATION UNDER
THE NEW YORK CITY ADMINISTRATIVE CODE
(AGAINST ALL DEFENDANTS)**

95.     Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

96.     The New York City Administrative Code Title 8, §8-107(1)(e) provides that

13

it shall be unlawful discriminatory practice: "For an employer . . , to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter. . . "

97.    Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1) (e) by discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

**AS A TENTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**
**(AGAINST ALL DEFENDANTS)**

98.    Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

99.    The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

100.    Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

**AS AN ELEVENTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**
**(AGAINST ALL DEFENDANTS)**

101.    Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

102.    Section 8-107(19), entitled Interference With Protected Rights provides that "It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or

interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section."

103.    Defendants violated the above section as set forth herein.

### AS A TWELFTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER
### THE NEW YORK CITY ADMINISTRATIVE CODE
### (AGAINST ALL DEFENDANTS)

104.    Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

105.    Section 8-107(13) entitled Employer Liability For Discriminatory Conduct By Employee, Agent or Independent Contractor provides "An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section." b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where: (1) the employee or agent exercised managerial or supervisory responsibility; or (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

106.    Defendants violated the above section as set forth herein.

### AS A THIRTEENTH CAUSE OF ACTION
### FOR VIOLATION OF SEC. NYLL 195-1
### (Not against any individual Defendants)

107.     Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint. NYLL § 195(1) requires that employers provide employees with a wage notice at the time of hire containing accurate, specifically enumerated criteria.

108.     As described above, Defendant A360 was an employer within the meaning of the NYLL, while Plaintiff was an employee within the meaning of the NYLL.

109.     As also described above, Defendant failed to furnish Plaintiff with a wage notice at the time of her hire in January 2019, that accurately contained all of the criteria that the NYLL requires.

110.     On or after February 27, 2015, pursuant to NYLL § 198(1-b), Defendant is liable to Plaintiff in the amount of $50 for each workday after the violation occurred, up to a statutory cap of $5,000.

### FOURTEENTH CLAIM FOR RELIEF AGAINST DEFENDANT
*Slander Per Se* (as to Defendant DeNinno)

111.     Plaintiff repeats, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

112.     Defendant DeNinno communicated false statements about Plaintiff's professional reputation, to the Post wholly based false allegations against Plaintiff.

113.     By openly accusing Plaintiff of being unfit to work for the Post, Defendant DeNinno deprived Plaintiff of economic opportunity and career advancement not only within the Post but at New Corp., the Post's parent company.

114.    Defendant DeNinno made false statements about Plaintiff's professional career.

115.    The false accusations of acts of professional ineptitude, prior workplace complaints and disability comments made by the Defendant DeNinno, concerning Plaintiff are defamatory per se, and malign her honesty, trustworthiness, dependability and their character.

116.    As a direct and proximate result of the false and malicious defamatory statements in public, Defendant DeNinno caused Plaintiff injuries to her reputation, humiliation, disgrace, and loss of income.

117.    As a direct and proximate result of defendant's recklessness and wanton disregard, Plaintiff suffered and sustained injuries and damages including: emotional pain, suffering, embarrassment, shame, humiliation, inconvenience, mental anguish, loss of enjoyment of life, medical bills, impairment of her personal and professional reputation, damage caused by the Plaintiffs loss employment, and other pecuniary and non-pecuniary losses suffered..

118.    Plaintiff continues to suffer from emotional distress as a result to date.

### FIFTEENTH CLAIM FOR RELIEF AGAINST DEFENDANT
*Tortious Interference with a Prospective Business Opportunity as to* (as to Defendant DeNinno)

119.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

120.    In order for Plaintiff to prove Tortious Interference with a Prospective Business Opportunity, she must show, (1) the existence of a contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional inducement

of the third party to breach or otherwise render performance impossible; and (4) damages to plaintiff

121.   Here, DeNinno knew of Plaintiff's contract with the Post for employment and as retaliation for Plaintiff's complaints about her sought to disrupt her opportunities at the Post and provided false statements to the Post as an internal reference and thereby the Post rescinded their employment offer to Plaintiff, causing Plaintiff damages.

122.   Plaintiff suffered damages as a result of Defendant DeNinno's interference to "black-list" Plaintiff from working at the Post or News Corp.

123.   Plaintiff suffered damages as result of said conduct.

## SIXTEENTH CLAIM FOR RELIEF AGAINST DEFENDANT
### *Intentional Interference of a Contractual Relationship as to* (as to Defendant DeNinno)

124.   Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

125.   Plaintiff and the Post were parties of a contract for employment offer that provided that Plaintiff would provide journalist services for the Post.

126.   Defendant DeNinno sought to interfere with said contract and provided a false statement[s] as an internal reference to induce the cancellation the contract on behalf of the Post with the intent to deprive her the ability to work at the Post.

127.   Defendant DeNinno was not a party to the contract and sought to void or cancel the contract in order to disrupt Plaintiff's ability to earn income derived from the contract.

128.   As a further result of the conduct of the Defendant, the Plaintiff had been and, in the future will be unable to enjoy all of those of life's activities.

### SEVENTEENTH CLAIM FOR RELIEF AGAINST DEFENDANT
#### *Prima Facie Tort as to* (as to Defendant DeNinno)

129.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

130.    Defendant commenced a pattern of reckless, negligent, discriminatory and retaliatory proceedings against the Plaintiff culminating in the rescindment of a job offer and the blacklisting of Plaintiff at the Post and its parent company News Corp.

131.    As a direct and proximate result of Defendant's tortious conduct, Plaintiff has suffered, and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestation of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life.

### DEMAND FOR A JURY TRIAL

132.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims in this action.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

a.    A judgment declaring that the practices complained of herein are unlawful and in willful violation of the aforementioned United States, New York State and New York City laws;

b.    Awarding Plaintiff all damages;

c.    Awarding Plaintiff compensatory damages;

d.    Awarding Plaintiff punitive damages;

e.    Awarding Plaintiff consequential damages;

f.    Awarding Plaintiff statutory damages;

g.    Awarding Plaintiff costs and disbursements incurred in connection with this

action,    including reasonable attorneys' fees, expert witness fees, and other costs;

h.    Pre-judgment and post-judgment interest, as provided by law; and

i.    Granting Plaintiff further relief as this Court finds necessary and proper.

Dated: October 27, 2020
New York, New York


Respectfully submitted,



By:    *Christopher J. Berlingieri*
CHRISTOPHER J. BERLINGIERI, ESQ.
(CB 1988)
BERLINGIERI LAW, PLLC
*Attorney for Plaintiff*
244 Fifth Avenue, Suite F276
New York, New York 10001
Tel.:    (347) 766-5105
Fax:    (914) 730-1044
Email: cjb@nyctlaw.com

# EXHIBIT A

EEOC Form 161-B (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To:   **Brittany Romano**<br>        **409 East 64th Street**<br>        **Apt. 5-D**<br>        **New York, NY 10065** | From:   **Boston Area Office**<br>          **John F. Kennedy Fed Bldg**<br>          **15 New Sudbury Street, Room 475**<br>          **Boston, MA 02203** |

| | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **520-2020-02343** | **Hanh N. Nguyen,**<br>**Investigator** | **(617) 565-3205** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

| | |
|---|---|
| [ ] | More than 180 days have passed since the filing of this charge. |
| [X] | Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge. |
| [X] | The EEOC is terminating its processing of this charge. |
| [ ] | The EEOC will continue to process this charge. |

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

| | |
|---|---|
| [ ] | The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost. |
| [ ] | The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time. |

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

**Feng An**

Digitally signed by Feng An
DN: cn=Feng An, o=United States Equal Employment
Opportunity Commission, ou=Boston Area Office,
email=Feng.An@EEOC.GOV, c=US
Date: 2020.07.31 13:29:08 -04'00'

July 30, 2020

Enclosures(s)

**Feng K. An,**
**Area Office Director**

*(Date Mailed)*

cc:

**American Media Inc.**
**C/O: Cole Schotz PC**
**Attn: Marissa A. Mastroianni, Attorney**
**25 Main Street**
**Hackensack, NJ 07601**

**Christopher J. Berlingieri, Esq.**
**BERLINGIERI LAW, PLLC**
**244 Fifth Avenue,**
**Suite F276**
**New York, NY 10001**