UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

BRITTANY ROMANO,

        Plaintiff,

   -v-                                  No.  1:20-cv-08988-LTS-OTW

A360 MEDIA, LLC, f/k/a AMERICAN
MEDIA, INC., ELI LIPPMAN, SPENCER
CAIN, AND NADINE DENINNO, in their
individual and professional capacities,

        Defendants.

-------------------------------------------------------x

<u>MEMORANDUM OPINION AND ORDER</u>

        Plaintiff Brittany Romano ("Plaintiff") sues her former employer and supervisors for employment discrimination and retaliation, asserting claims under federal, state, and city law. The named defendants are three former supervisors (Eli Lippman, Spencer Cain, and Nadine DeNinno) as well as her former employer (A360 Media, LLC, f/k/a American Media, Inc. ("AMI")).  Against defendant AMI, Plaintiff asserts claims for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e <u>et seq.</u> ("Title VII"); the Americans with Disabilities Act, 42 U.S.C. § 12101 <u>et seq.</u> ("ADA"); and New York Labor Law § 195(1).  Against defendant DeNinno, Plaintiff asserts New York common law claims for slander, tortious interference with business opportunity, tortious interference with contract, and prima facie tort.  Against all defendants, Plaintiff asserts claims for violation of the New York State Human Rights Law, N.Y. Exec. Law § 296 <u>et seq.</u> ("NYSHRL"); and the New York City Human Rights Law, N.Y. City Admin. Code § 8-107 <u>et seq.</u> ("NYCHRL").  Except as otherwise indicated in the discussion below, the Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1367.

Before the Court are two motions to dismiss the complaint—one motion filed by defendant DeNinno, seeking the dismissal of Plaintiff's common law claims against her for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and the dismissal of Plaintiff's discrimination, retaliation, and workplace environment claims on the merits pursuant to Federal Rule of Civil Procedure 12(b)(6); and another motion filed by defendants Cain, Lippman, and AMI ("the AMI Defendants"), seeking dismissal of all of Plaintiff's claims on the merits pursuant to Rule 12(b)(6).  The Court has reviewed thoroughly the parties' submissions.  For the following reasons, both motions are granted in their entirety, but Plaintiff is granted leave to move to replead Counts 1 through 13 of her Complaint within 21 days of the entry of this Memorandum Opinion and Order.


BACKGROUND

The following facts are drawn from the Complaint, the well-pleaded allegations of which are taken as true for the purposes of the motions to dismiss.  Plaintiff is a woman who suffers from attention deficit hyperactivity disorder ("ADHD") and dyslexia.  (Docket entry no. 1 ("Compl.") ¶ 12.)  Plaintiff began working for AMI in January 2019 as a commerce writer; her duties consisted primarily of writing articles for AMI's websites.  (Id. ¶¶ 13, 26-27.)  Plaintiff's first supervisor at AMI was Nadine DeNinno.  (Id. ¶ 14.)  Shortly after her hire, Plaintiff informed DeNinno that she suffered from ADHD.  (Id.)  From that point on, Plaintiff alleges, DeNinno "treated Plaintiff differently on the basis of her ADHD."  (Id. ¶¶ 14-15.)

Specifically, Plaintiff asserts that DeNinno "ostracized Plaintiff and screamed at her in front of coworkers on the basis of her disability and other things related to work," "made Plaintiff feel like she was being disciplined publicly for non-events and for miniscule work

matters," and "failed to regularly communicate with Plaintiff regarding work issues."  (Id. ¶¶ 17-21.)  Due to this treatment by DeNinno, Plaintiff and "at least" two other female co-workers complained to AMI's Human Resources ("HR") department in May 2019 regarding DeNinno's "abusive and toxic management style."  (Id. ¶ 16.)  Immediately after the complaint to HR, DeNinno retaliated by deleting the "Slack" accounts for Plaintiff and one of her co-workers, which "contained important information about their work."  (Id. ¶ 20.)  DeNinno also refused to speak with Plaintiff and her co-workers following the HR complaint.  (Id. ¶ 21.)

In September 2019, DeNinno left AMI and Plaintiff was thereafter assigned a new supervisor, Spencer Cain.  (Id. ¶¶ 9-10, 22-23, 26.)  Eli Lippman, whom Plaintiff describes as a Director of AMI who performed his duties in California, determined Plaintiff's work duties.  (Id.)  Plaintiff alleges that her new managers also treated her differently "based on her sex and disability."  (Id. ¶ 25.)  Specifically, Lippman asked Plaintiff to "do numbers" and "copy and paste content on the website," instead of writing her own original articles as she had previously done.  (Id. ¶ 26.)  Lippman also asked Plaintiff "personal questions about her friends, social life, and personal plans in NYC she had during the weekends," which made Plaintiff "[feel] uncomfortable."  (Id. ¶ 29.)  Plaintiff describes the company culture as a "sexist, all boy club culture."  (Id. ¶ 36.)

In January 2020, Plaintiff complained to Lippman about her change in job duties, "citing Plaintiff's ADHD as a reason why she could not easily perform the copy and paste and numbers functions as requested," and asked for "a reasonable accommodation, so that she could work effectively."  (Id. ¶¶ 30-31.)  Lippman denied this request, "failed to engage in the interactive process with Plaintiff regarding her request for accommodations," and "demanded"

that she continue her job duties as assigned.  (<u>Id.</u> ¶¶ 32-33.)  Lippman also changed Plaintiff's

"by-line" from "writer" to "admin."  (<u>Id.</u> ¶ 34.)

On February 4, 2020, Plaintiff filed a charge with the Equal Employment

Opportunity Commission ("EEOC") alleging retaliation, disability discrimination, and sex

discrimination by AMI.  (<u>Id.</u> ¶ 36.)  On March 2, 2020, AMI terminated Plaintiff's employment.

(<u>Id.</u> ¶ 37.)  Plaintiff describes her termination as motivated by "retaliation for her filing her

EEOC charge, complaining about management, and requesting a reasonable accommodation,"

but also notes that AMI informed her that her termination "was due to layoffs."  (<u>Id.</u> ¶¶ 37-38.)

She asserts that the layoff rationale was pretextual because no one else in her department was

terminated during that time and because her department was a top revenue generator for the

company.  (<u>Id.</u>)

Plaintiff then began her search for a new job, and eventually applied for a position

with the <u>New York Post</u> in September 2020.  (<u>Id.</u> ¶ 42.)  She was extended a job offer as a

"commerce journalist" in the paper's digital media department on October 1, 2020, and informed

the <u>Post</u> that she would accept the offer.  (<u>Id.</u> ¶¶ 43-44.)  DeNinno, Plaintiff's former manager,

was Associate Digital Editor at the <u>Post</u>, and would have been Plaintiff's manager there.  (<u>Id.</u> ¶

45.)  On October 2, 2020, the <u>Post</u> rescinded Plaintiff's job offer due to an "internal reference"—

which Plaintiff believes was DeNinno.  (<u>Id.</u> ¶ 46.)  Plaintiff asserts her belief that DeNinno made

false statements about Plaintiff's professional ability which caused her to lose the job offer.  (<u>Id.</u>

¶ 47.)  Plaintiff initiated this action on October 27, 2020.

<u>DISCUSSION</u>

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face.'"  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  A proper complaint cannot simply recite legal conclusions or bare elements of a cause of action; it must plead factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  Under the Rule 12(b)(6) standard, the court accepts as true the non-conclusory factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor.  <u>Roth v. Jennings</u>, 489 F.3d 499, 501 (2d Cir. 2007).

The defendants raise a number of arguments as to why Plaintiff's Complaint should be dismissed.  The Court addresses each argument below.

<u>Tort Claims Against DeNinno - Supplemental Jurisdiction</u>

Defendant DeNinno seeks dismissal of Plaintiff's four state-law tort claims,[1] arguing that the Court lacks supplemental jurisdiction over those claims, which focus on DeNinno's allegedly false unfavorable remarks regarding Plaintiff in connection with her proposed employment by the <u>Post</u>.  Plaintiff does not oppose the dismissal of two of the claims—tortious interference with contract and prima facie tort—but asserts that the Court can properly exercise supplemental jurisdiction of Plaintiff's claims for defamation and tortious

---

[1]   These four tort claims, which are asserted against DeNinno only and concern statements allegedly made by DeNinno to the <u>Post</u> about Plaintiff, are for slander, tortious interference with contract, tortious interference with business opportunity, and prima facie tort.  (Compl. at 16-19, Counts no. 14-17.)

interference with prospective business opportunity.  (See docket entry no. 35 at 2.)  For the following reasons, all four claims will be dismissed for lack of subject matter jurisdiction.

The Court has original jurisdiction of Plaintiff's federal statutory claims pursuant to 28 U.S.C. section 1331, which provides district courts with "jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States"—i.e., federal question jurisdiction.  28 U.S.C. § 1331.  In such cases, a district court will also have "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367.  Courts have interpreted this statute to mean that, in federal question cases, federal courts have supplemental jurisdiction to hear a state law claim only when both "derive from a common nucleus of operative fact."  Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 245 (2d Cir. 2011).  In determining whether supplemental jurisdiction exists, courts "traditionally ask[] whether the facts underlying the federal and state claims substantially overlap[]."  Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 335 (2d Cir. 2006) (citation omitted).

Here, DeNinno argues that there is no factual overlap between Plaintiff's federal discrimination claims, which concern events that allegedly occurred during Plaintiff's employment by AMI, and her state law tort claims.  DeNinno asserts that the federal claims all relate to incidents that occurred while both she and Plaintiff worked at AMI, whereas the state tort claims all relate to actions that DeNinno allegedly took individually following Plaintiff's departure from AMI.  Plaintiff, however, argues that the claims are sufficiently related because both involved employment discrimination committed against Plaintiff by the same individual,

DeNinno.  The Court concludes that there is insufficient factual overlap between the federal statutory claims and the state tort claims to support supplemental jurisdiction.

Factors that tend to show a substantial factual overlap for purposes of supplemental jurisdiction include, inter alia: (1) a close temporal connection between the claims; and (2) a significant overlap in the evidence that would be used during the litigation of both claims.  See, e.g., Shearon v. Comfort Tech Mech. Co., No. 12-CV-96, 2014 WL 1330751, at *3 (E.D.N.Y. Mar. 31, 2014) (finding no supplemental jurisdiction where there was "no demonstrable [temporal] overlap" or "close temporal connection" between the events giving rise to the state claims and those giving rise to the federal claims); Chaluisan v. Simsmetal E. LLC, 698 F. Supp. 2d 397, 401-03 (S.D.N.Y. 2010) (finding that supplemental jurisdiction existed when the state and federal claims were "likely to require testimony from the same witnesses" and involved "much of the same evidence") (citations omitted).  In contrast, supplemental jurisdiction does not extend to claims that "involve different rights, different interests, and different underlying facts."  Bu ex rel. Bu v. Benenson, 181 F. Supp. 2d 247, 254 (S.D.N.Y. 2001).

Here, all of these factors counsel against the existence of supplemental jurisdiction.  First, there were several months separating the events underlying Plaintiff's state tort and federal claims—Plaintiff's federal claims arose during her employment with AMI (which ended in March 2020), whereas her state tort claims did not arise until her subsequent interactions with the Post (which occurred in September – October 2020).  Second, there is minimal overlap in the evidence that would be used to litigate these claims.  Plaintiff's federal claims would focus principally on AMI's management and workplace policies and practices, whereas her state tort claims would focus principally on the circumstances surrounding the

withdrawal of the offer by the <u>Post</u> and DeNinno's role, if any, in that decision.  Third, the claims involve entirely different alleged injuries, with Plaintiff's federal claims raising allegations of sex and disability discrimination, and her state tort claims raising allegations of slander and interference with business opportunities.

The only commonality between Plaintiff's federal discrimination claims and her state tort claims is that they both involve actions allegedly taken by her former supervisor, DeNinno, in the general context of Plaintiff's employment.  This minimal connection is not sufficient to create a common nucleus of operative fact, and accordingly is not sufficient to confer supplemental jurisdiction over Plaintiff's state law tort claims.  Furthermore, even if this connection were sufficient to support the exercise of supplemental jurisdiction of the tort claims, the Court would decline to do so because the legal issues presented by the state law tort claims against DeNinno substantially predominate over the federal statutory claims involving this Defendant.  Accordingly, Counts 14-17, which are brought only against defendant DeNinno, are dismissed for lack of subject matter jurisdiction.

<u>Employment Discrimination Claims</u>

Defendants move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Plaintiff's employment discrimination claims under Title VII; the ADA; the NYSHRL; and the NYCHRL;[2] principally on the grounds that the Complaint lacks specific, non-conclusory factual allegations which would give rise to an inference of sex discrimination or

---

[2]    The Court has supplemental jurisdiction of Plaintiff's remaining state and local claims because they all arose during the course of her employment at AMI; all occurred within a similar time frame; all involved alleged unlawful discrimination by her AMI supervisors; and all would rely on substantially overlapping evidence. The claims thus share a common nucleus of operative fact.

disability discrimination.  For the reasons that follow, the Court dismisses all of Plaintiff's discrimination claims, but grants Plaintiff leave to move to replead each of the dismissed discrimination and retaliation claims.

Sex Discrimination Claims

Under the McDonnell Douglas burden-shifting framework, the elements of a prima facie sex discrimination claim under Title VII or the NYSHRL[3] are that: (1) the plaintiff is a member of a protected class; (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to an inference of discrimination.  Littlejohn v. City of New York, 795 F.3d 297, 307 (2d Cir. 2015) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)).  At the motion to dismiss stage, however, "an employment discrimination plaintiff need not plead a prima facie case of discrimination."  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 515 (2002).  Rather, "what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." Littlejohn, 795 F.3d at 311.  With regard to this final element, an inference of discriminatory intent "can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in . . . degrading terms [regarding the protected group of which she is a member]; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'"  Id. at 312 (citation omitted).

---

[3]      "Employment discrimination claims brought under the NYSHRL are analyzed identically to claims under . . . Title VII."  Brennan v. Metro. Opera Ass'n, Inc., 192 F.3d 310, 317 n2 (2d Cir. 1999).

To state a claim for sex discrimination under the "more lenient" standard of the NYCHRL, a plaintiff's complaint must allege facts which allow a court to conclude that "the plaintiff was 'treated less well'" because of her membership in a protected class.  Soloviev v. Goldstein, 104 F. Supp. 3d 232, 250 (E.D.N.Y. 2015) (quoting Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 110 (2d Cir. 2013)); see also Piligian v. Icahn Sch. of Med. at Mount Sinai, 490 F. Supp. 3d 707, 717 (S.D.N.Y. 2020) (citation omitted) (the NYCHRL carries "a lower threshold for actionable conduct and must be construed liberally in favor of discrimination plaintiffs").  Even under the "more liberal standards" of the NYCHRL, however, the plaintiff "still bears the burden of showing that the conduct complained of [was] *caused by* a discriminatory motive,"  Nieblas-Love v. New York City Hous. Auth., 165 F. Supp. 3d 51, 67 n.2 (S.D.N.Y. 2016) (emphasis added), and the plaintiff must do more than assert a "subjective belief" that her mistreatment was due to her protected characteristics.  Joseph v. Owens & Minor Distribution, Inc., 5 F. Supp. 3d 295, 309 (E.D.N.Y. 2014), aff'd, 594 F. App'x 29 (2d Cir. 2015).

<u>Sex Discrimination Claims against AMI Defendants</u>

Plaintiff brings sex discrimination claims against the AMI Defendants under Title VII,[4] the NYSHRL, and the NYCHRL, asserting that AMI unlawfully terminated her employment on the basis of sex, as shown by "the circumstances surrounding her poor treatment and termination" by her "male supervisors."  (Docket entry no. 36 at 15; Compl ¶¶ 25 – 30, 37-

---

[4]    All of Plaintiff's claims under Title VII and the ADA are brought against AMI only (not Lippman and Cain as individuals).  Neither of those statutes provides for individual liability.  See Wrighten v. Glowski, 232 F.3d 119, 120 (2d Cir. 2000) ("[I]ndividuals are not subject to liability under Title VII."); Lauria v. Donahue, 438 F. Supp. 2d 131, 139-40 (E.D.N.Y. 2006) ("The law is well settled that individuals cannot be held liable for Title VII and ADA violations.") (citation omitted).

40.)  Drawing all reasonable inferences in Plaintiff's favor, the Court concludes that Plaintiff has sufficiently alleged the first three elements of a discrimination claim—she belonged to a protected class (female); she was qualified for her position with AMI; and she suffered an adverse employment action when she was discharged by AMI in March 2020.  However, even under the more liberal standard of the NYCHRL, Plaintiff has not alleged sufficient facts to raise an inference of discriminatory motive—in other words, Plaintiff has not sufficiently alleged that she was terminated because of her sex.

Plaintiff alleges that Cain and Lippman discriminated against her on the basis of her sex by asking her unwanted questions about her personal life and her plans on the weekend, by generally making her feel "uncomfortable," and by maintaining a "sexist, all boy club culture" in the workplace.  (Compl. ¶¶ 29, 36)  Plaintiff's vague allegations of a sexist culture and being made to feel uncomfortable are too conclusory to support her discrimination claims. Moreover, her allegations of unwanted personal questions are insufficient to sustain her sex discrimination claims because she has not alleged facts suggesting that she was subjected to these questions *due to* her sex—for example, she has not alleged facts suggesting that only female employees were asked questions about their personal lives.  Plaintiff fails to provide any basis for an inference that there was a causal connection between her sex and her treatment by her supervisors.  Accordingly, Plaintiff's sex discrimination claims against the AMI Defendants under Title VII, the NYSHRL, and the NYCHRL (as asserted in Counts 1, 5, and 8) are dismissed, with leave to move to replead.

<u>Sex Discrimination Claims against Defendant DeNinno</u>

Plaintiff also brings a sex discrimination claims against DeNinno under the NYSHRL, conclusorily asserting that DeNinno "discriminat[ed] against the Plaintiff because of

her sex." (Compl. ¶ 83.)  Plaintiff provides no details linking this assertion to any specific

factual allegations in the Complaint.  Drawing inferences in her favor, Plaintiff appears to

attribute DeNinno's alleged screaming at her in front of coworkers, disciplining her publicly, and

generally having a "toxic and abusive" management style to sex discrimination.  (Compl. ¶ 16-

21.)  This claim must fail for the same reason discussed in connection with her sex

discrimination claim against the AMI Defendants—Plaintiff's failure to show any causal

connection between her sex and her alleged treatment.  Accordingly, Plaintiff's sex

discrimination claim against DeNinno under the NYSHRL (as asserted in Count 5) is dismissed,

with leave to move for permission to replead.

Disability Discrimination Claims

The elements of a claim for disability discrimination under the ADA are that:

> (1) the defendant is covered by the ADA; (2) plaintiff suffers from
> or is regarded as suffering from a disability within the meaning of
> the ADA; (3) plaintiff was qualified to perform the essential
> functions of the job, with or without reasonable accommodation;
> and (4) plaintiff suffered an adverse employment action because of
> his disability or perceived disability.

Novick v. Vill. of Wappingers Falls, New York, 376 F. Supp. 3d 318, 341 (S.D.N.Y. 2019)

(citation omitted).

The final element of this ADA test requires that a plaintiff "establish that his

disability was the but-for cause of the adverse employment action."  McCrain v. Metro.

Transportation Auth., No. 17-CV-2520-RA, 2020 WL 1285634, at *13 (S.D.N.Y. Mar. 18,

2020).  "The elements to find disability discrimination under the NYSHRL and NYCHRL

generally track the ADA," with the caveat that the "NYSHRL provides broader protection than

the ADA, and the NYCHRL is broader still."  Thomson v. Odyssey House, No. 14-CV-3857-

MKB, 2015 WL 5561209, at *18 (E.D.N.Y. Sept. 21, 2015), aff'd, 652 F. App'x 44 (2d Cir.

2016) (citation omitted).  Under the NYCHRL, a plaintiff need only allege that " he was treated less well *because of* his [disability]."  <u>Gonzalez v. City of New York</u>, 377 F. Supp. 3d 273, 302 (S.D.N.Y. 2019).

<u>Disability Discrimination Claims against AMI Defendants</u>

Plaintiff brings disability discrimination claims against the AMI Defendants under the ADA, the NYSHRL, and the NYCHR, asserting that the AMI Defendants unlawfully altered the conditions of her employment on the basis of her ADHD.  Specifically, she asserts that the AMI Defendants began assigning her undesirable administrative job duties, such as doing "numbers" or copying and pasting links, as opposed to her previous job duties of writing original articles.  (Compl. ¶ 26.)  She also asserts that AMI changed her job title/by-line from "writer" to "admin."  (<u>Id.</u> ¶ 34.)  Plaintiff asserts that these changes in her job duties and her title were the products of discrimination based on her ADHD,[5] including failure reasonably to accommodate her condition by restoring her original job duties.  (<u>Id.</u> ¶¶ 29-35.)

The AMI Defendants argue that these claims should be dismissed because (1) Plaintiff was unqualified for her job; (2) the alteration of Plaintiff's job duties does not qualify as an adverse employment action; and (3) Plaintiff cannot demonstrate that any change in her job

---

[5]     Defendants do not dispute that ADHD qualifies as a disability under the relevant discrimination statutes.  The Court notes that the "definition of disability under the NYCHRL, which includes 'any physical, medical, mental, or psychological impairment,' is broader than the definition of disability in the ADA."  <u>Hernandez v. Int'l Shoppes, LLC</u>, 100 F. Supp. 3d 232, 254 (E.D.N.Y. 2015) (citing NYC Admin Code § 8-102(16)); <u>see also</u> <u>Konipol v. Restaurant Assoc.</u>, No. 01-CV-7857-GEL, 2002 WL 31618825, at *6 (S.D.N.Y. Nov. 20, 2002) ("Except to the extent that the NYCHRL supports a broader definition of 'disability,'—an issue not material here—the legal standards for discrimination claims under the ADA and under New York state and city law are essentially the same.") (citation omitted).

duties occurred because of her disability.  The Court concludes that the Complaint, as currently

plead, does not contain enough information to plausibly state a disability discrimination claim.

First, the AMI Defendants contend that Plaintiff's inability to perform these

administrative tasks rendered her unqualified to perform the essential functions of the job,

because her job as an e-commerce writer necessarily entailed administrative duties like copying

and pasting links between websites.  The Court declines to address this argument at this stage, as

it inappropriately relies on factual information not contained in the pleadings.  See Toretto v.

Donnelley Fin. Sols., Inc., 583 F. Supp. 3d 570, 607 (S.D.N.Y. 2022) (noting that, when

considering a motion to dismiss, "courts usually cannot consider evidence outside the

pleadings") (citation omitted).  For now, it is sufficient that Plaintiff alleged that she was hired as

a commerce writer and alleges that she performed those duties for a number of months before her

job duties were altered.

Second, the AMI Defendants assert that the alteration of Plaintiff's job duties

does not qualify as an adverse employment action.  This argument is unavailing, because as the

Second Circuit has recognized, a change in the conditions of employment "can amount to an

adverse employment action, but only if it is 'more disruptive than a mere inconvenience or an

alteration of job responsibilities.'"  Nieblas-Love, 165 F. Supp. 3d at 71 (quoting Terry v.

Ashcroft, 336 F.3d 128, 138 (2d Cir 2003)).  Examples of materially adverse changes to the

conditions of employment include "a demotion evidenced by a decrease in wage or salary, a less

distinguished title, a material loss of benefits, [or] significantly diminished material

responsibilities."  Sanders v. New York City Hum. Res. Admin., 361 F.3d 749, 755 (2d Cir.

2004) (citation omitted).  Here, taking all allegations in the Complaint as true, Plaintiff has

alleged that she suffered both a downgrade in her job title (from "writer" to "admin") as well as a

significant alteration in her material responsibilities (from original article writing, to rote administrative tasks).  These allegations are sufficient to support Plaintiff's claim of a material adverse change at the pleading stage.

Third, the AMI Defendants argue that Plaintiff cannot demonstrate a causal connection between the change in her job duties and her disability.  The Court concludes that Plaintiff has not alleged sufficient facts to support an inference that her job duties were altered because of her ADHD status.  Plaintiff asserts conclusorily that she informed Defendant Lippman about her ADHD and was treated less well as a result—however, Plaintiff's Complaint lacks any factual information to show a causal connection between her disability and the job duty changes.  Accordingly, Plaintiff's disability discrimination claims against the AMI Defendants under the ADA, the NYSHRL, and the NYCHRL (as asserted in Counts 3, 5, and 8) are dismissed with leave to move for permission to replead.

Disability Discrimination Claims against DeNinno

Plaintiff asserts disability discrimination claims against Defendant DeNinno pursuant to the NYSHRL and the NYCHRL.  DeNinno moves to dismiss all of the claims, arguing principally that Plaintiff has alleged no facts from which it can reasonably be inferred that any of DeNinno's actions were motivated by discriminatory intent.

Here, Plaintiff alleges that she disclosed her ADHD condition soon after joining AMI and that DeNinno thereafter discriminated against her by ostracizing her in the workplace, screaming at her in front of co-workers, failing to regularly communicate regarding work issues, and by deleting her Slack instant messaging application after she made an HR complaint.  She asserts, conclusorily, that DeNinno took these actions because of Plaintiff's disability, alleging that DeNinno treated her "differently on the basis of her ADHD" but she fails to proffer any facts

regarding the treatment afforded to others.  (Compl. ¶ 15.)  Plaintiff has not alleged facts sufficient to support an inference of disability-based discrimination.  In fact, the Complaint tends to suggest that Plaintiff and her (presumably non-disabled) co-workers suffered the *same* mistreatment by DeNinno, in that Plaintiff alleges that she and at least two other employees to complained AMI's HR department at about the same time about DeNinno's "abusive and toxic" management style.  (Compl. ¶ 16.)  Accordingly, because Plaintiff fails to allege facts indicating that she was treated less well because of her disability, her claim of disability discrimination against DeNinno fails.  Plaintiff's disability discrimination claims against DeNinno under the NYCHRL and NYSHRL (as asserted in Counts 5 and 8) are dismissed with leave to move to replead.


Hostile Work Environment

Defendants next move to dismiss Plaintiff's hostile work environment claims under Title VII, the NYSHRL, and the NYCHRL.  For the reasons that follow, the Court dismisses all of Plaintiff's hostile work environment claims.

A hostile work environment exists under Title VII or the NYSHRL when an employee faces discriminatory harassment that is "sufficiently severe or pervasive [as] to alter the conditions of the victim's employment and create an abusive working environment."  Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002).  In other words, such conditions exist when "the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered."  Id.  To meet this threshold, a plaintiff "must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of

her working environment."  Id. (citation omitted).  It is "axiomatic" that, in order to show a

hostile work environment, the plaintiff "must demonstrate that the conduct occurred because of"

her protected characteristic.  Id.

        The hostile work environment standard under the NYCHRL is somewhat more

relaxed, and "less egregious conduct than that required under Title VII may support a hostile

work environment claim."  Panzarino v. Deloitte & Touche LLP, No. 05-CIV-8502-BSJ-RLE,

2009 WL 3539685, at *9 (S.D.N.Y. Oct. 29, 2009).  However, even under the NYCHRL a

"petty, slight, or trivial inconvenience [is] not actionable," and a plaintiff "must still establish

that she suffered a hostile work environment *because of her gender*."  Russo v. New York

Presbyterian Hosp., 972 F. Supp. 2d 429, 450-51 (E.D.N.Y. 2013) (citations omitted).  "Isolated

incidents of unwelcome verbal and physical conduct have been found to constitute the type of

'petty slights and trivial inconveniences' that are not actionable even under the more liberal

NYCHRL standard."  Id.

    Hostile Work Environment Claims against the AMI Defendants

        Plaintiff asserts that the AMI Defendants created a hostile work environment, in

violation of Title VII, the NYSHRL, and the NYCHRL, by asking her unwanted questions about

her personal life and her plans on the weekends, making her feel uncomfortable, treating her

poorly, and fostering a sexist environment at AMI.  She summarily alleges that she was treated

differently in the workplace because of her sex.

        Even under the liberal standard of the NYCHRL, these conclusory allegations are

insufficient to state plausibly a claim for a hostile work environment.  Plaintiff has not alleged

facts suggesting that matters of which she complains were anything more than isolated incidents

of unwelcome verbal conduct.  Nor has Plaintiff proffered facts that could support an inference

that her supervisors' actions occurred because of her gender (or her disability)—for example, she has not alleged that only female or disabled employees were asked unwanted personal questions. Plaintiff's hostile work environment claims against the AMI Defendants claims under Title VII, the NYSHRL, and the NYCHRL (as asserted in Counts 1, 5, and 8) are dismissed with leave to move to replead.

### Hostile Work Environment Claims against DeNinno

Plaintiff also asserts that she was subjected to a hostile work environment by DeNinno on the basis of her disability, in violation of the NYSHRL and the NYCHRL. She alleges that DeNinno discriminated against her by ostracizing her in the workplace, screaming at her in front of co-workers, failing to regularly communicate regarding work issues, and by deleting her Slack instant messaging application after she made an HR complaint. She asserts conclusorily that DeNinno took these actions because of Plaintiff's ADHD. These conclusory allegations are likewise insufficient to state a plausible hostile work discrimination claim against DeNinno. Even presuming *arguendo* that Plaintiff has alleged mistreatment by DeNinno that rises above the level of petty slights or trivial inconveniences, she has not alleged any facts that would permit an inference that any such mistreatment occurred because of her ADHD. Accordingly, Plaintiff's hostile work environment claims against DeNinno under the NYSHRL and NYCHRL (as asserted in Counts 5 and 8) are dismissed with leave to move to replead.

### Reasonable Accommodations

Plaintiff's next claim is an ADA reasonable accommodation claim against the AMI Defendants, which the AMI Defendants contend should be dismissed because her requested accommodation was not reasonable. The ADA provides that "discrimination" occurs when an

employer does "not [make] reasonable accommodations to the known physical or mental limitations of an otherwise qualified . . . employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business."  42 U.S.C. § 12112(b)(5)(A).  To make out a prima facie[6] case of discrimination, a plaintiff bringing a reasonable accommodation claim must demonstrate that

> (1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.

McBride v. BIC Consumer Prod. Mfg. Co., 583 F.3d 92, 97 (2d Cir. 2009) (citation omitted).

Reasonable accommodations may include, inter alia, "job restructuring; part-time or modified work schedules; [or] reassignment to a vacant position."  29 CFR § 1630.2(o)(2). Determining what "constitutes a reasonable accommodation is necessarily fact-specific," and requires "an inquiry not only into the benefits of the accommodation but into its costs as well." Lewis v. Livingston Cty. Ctr. for Nursing & Rehab., 30 F. Supp. 3d 196, 210-11 (W.D.N.Y. 2014).  A reasonable accommodation should not "involve the elimination of an essential function of a job."  Shannon v. New York City Transit Auth., 332 F.3d 95, 100 (2d Cir. 2003).  A disabled employee's request for accommodation triggers a duty on the part of the employer to "initiate an informal, interactive process with the [employee]" with the aim of "identify[ing] the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations."  Goonan v. Fed. Rsrv. Bank of New York, 916 F. Supp. 2d

---

[6]    As explained above (supra page 9), while an employment discrimination plaintiff need not plead a prima facie case of discrimination at the motion to dismiss stage, Swierkiewicz., 534 U.S. at 515, the elements of a prima facie case may nevertheless "be used as a prism to shed light upon the plausibility of the claim."  Littlejohn, 795 F.3d at 324 n.9 (citation omitted).

470, 479-80 (S.D.N.Y. 2013).  An employer violates the ADA by failing to engage in (or by prematurely terminating) this interactive process.  Id.

   Here, Plaintiff asserts that she was denied reasonable accommodations by AMI with regard to her ADHD.  Plaintiff alleges that she complained to Lippman about her altered job duties in January 2020, "citing Plaintiff's ADHD as a reason why she could not easily perform the copy and paste and numbers functions as requested," and that she requested "a reasonable accommodation, so that she could work effectively."  (Compl. ¶¶ 30-31.)  Specifically, she requested that Lippman relieve her of the administrative duties and instead allow her to "simply write articles" as she used to.  (Id. ¶¶ 30-33.)  Lippman denied this request, "failed to engage in the interactive process with Plaintiff regarding her request for accommodations," and "demanded" that she continue her job duties as assigned.  (Id. ¶¶ 32-33.)

   In the context of this motion practice, the AMI Defendants do not dispute the first two elements of Plaintiff's reasonable accommodation claim—that her ADHD qualified as a disability and that they had notice of it.  The Court concludes that Plaintiff has adequately pled that the AMI Defendants failed to participate in good faith in the interactive process.  According to Plaintiff, the AMI Defendants unilaterally shut down her attempts to discuss potential reasonable accommodations for her disability and instead demanded that she continue her duties with no accommodations.

   Regarding the third element of the reasonable accommodation claim, the AMI Defendants argue that Plaintiff has failed to allege that she could perform the essential functions of her position, and further argue that her requested accommodation was unreasonable.  A reasonable accommodation, by definition, should not "involve the elimination of any essential function of a job."  Shannon, 332 F.3d at 100.  Additionally, "[t]he ADA provides that

reassignment to a *vacant* position is a reasonable accommodation, but it does not require employers to create entirely new positions" for an employee who requests an accommodation. Harvin v. Manhattan & Bronx Surface Transit Operating Auth., 767 F. App'x 123, 126 (2d Cir. 2019). The allegations of the Complaint are, however, insufficient to support the inference that Plaintiff's requested accommodations were reasonable. It is not clear whether the "copy and paste" functions were essential to the job of a writer, or whether there was a vacant position for a writer that did not involve such functions. Accordingly, Plaintiff's ADA claim against the AMI Defendants premised on a failure to make reasonable accommodations (as asserted in Count 3) is dismissed with leave to move to replead.

Retaliation

Plaintiff also asserts retaliation claims under Title VII, the ADA, the NYSHRL, and the NYCHRL. All Defendants move to dismiss these claim, principally on the grounds that Plaintiff cannot demonstrate a causal connection between her protected activity and any adverse employment action. The Court dismisses these claims with leave to move to replead.

Title VII, the ADA, the NYSHRL, and the NYCHRL all declare that it is unlawful for an employer to retaliate against an employee because the employee has opposed an unlawful discriminatory practice or cooperated in an investigation of discrimination. See 42 U.S.C. § 2000e-3(a); 42 U.S.C. § 12203(a); N.Y. Exec. Law § 296(7); N.Y. City Admin. Code § 8-107(7). The elements of a prima facie retaliation claim under Title VII, the ADA, or the NYSHRL, are as follows: "(1) that plaintiff was engaged in a protected activity, (2) that defendants knew of the protected activity, (3) that defendants took adverse employment actions against plaintiff, and (4) a causal connection between the protected activity and the adverse

action." <u>Soloviev</u>, 104 F. Supp. 3d at 250.  A plaintiff can satisfy the fourth element—a causal connection—by "(a) indirectly showing that the protected activity was followed closely by discriminatory treatment; (b) indirectly though other evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (c) directly through evidence of retaliatory animus." <u>Id</u>.

Under the NYCHRL, the elements of a retaliation claim are less demanding, only requiring a plaintiff to demonstrate that "they took an action opposing the employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." <u>Id</u>. at 252 (quoting <u>Mihalik</u>, 715 F.3d at 112).

<u>Retaliation Claims against Defendant DeNinno</u>

Plaintiff asserts that DeNinno unlawfully retaliated against her in violation of the NYSHRL and the NYCHRL.  Specifically, Plaintiff claims that she engaged in a protected activity by complaining to HR about DeNinno, and that DeNinno unlawfully retaliated by deleting Plaintiff's Slack application and refusing to speak with her.  DeNinno moves to dismiss both claims, arguing principally that Plaintiff's act of complaining to HR was not a protected activity.

Under both the NYSHRL and the NYCHRL, a key element of a retaliation claim is that the plaintiff must have engaged in a "protected activity" of which her employer was aware.

> The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination. The scope of such activity is broad: When an employee communicates to her employer a belief that the employer has engaged in a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the activity.  Protected activity may include both formal and informal complaints, including complaints to management.

Farmer v. Shake Shack Ent., LLC, 473 F. Supp. 3d 309, 331 (S.D.N.Y. 2020) (citations and quotations omitted).

   Courts in the Second Circuit have consistently held that, when an employee engages in an activity that might otherwise qualify as protected—such as making an HR complaint or filing a lawsuit—the activity is not protected when the communication *makes no mention of discrimination*.  For example, in Murphy, an employee made a written complaint to company management, stating that she felt "bullied" and "harassed" by her immediate supervisor.  Murphy v. City of Newburgh, 785 F. App'x 900, 902 (2d Cir. 2019).  The Second Circuit explained that the plaintiff's complaint could not qualify as a protected activity under Title VII because it "does not allege that [her supervisor] treated her poorly *based on her gender or any other protected class status*."  Id. (emphasis added).  See also Soloviev, 104 F. Supp. 3d at 251 (finding that a plaintiff's lawsuit against his employer did not constitute protected activity under the NYSHRL because it did not make "any mention of discrimination").

   Here, Plaintiff summarily asserts that her complaint to HR constituted a protected activity because she complained about DeNinno's mistreatment of her in the workplace.  However, there is no allegation that the HR complaint made any reference to *discrimination*—rather, Plaintiff states that she and "at least two other female employees" complained to HR about DeNinno's "abusive and toxic" management style.  (Compl. ¶ 16.)  This general complaint about management style is insufficient to qualify as protected activity, and the retaliation claim must therefore be dismissed.  Accordingly, Plaintiff's retaliation claims against Defendant

DeNinno[7] under the NYSHRL and the NYCHRL (as asserted in Counts 6 and 9) are dismissed with leave to move to replead.

### Retaliation Claims against the AMI Defendants

Plaintiff asserts that the AMI Defendants unlawfully retaliated against her in violation of Title VII, the ADA, the NYSHRL, and the NYCHRL.  Specifically, Plaintiff claims that she engaged in a protected activity by filing her EEOC complaint, and that AMI unlawfully retaliated against her by terminating her employment.  The AMI Defendants move to dismiss both claims, arguing principally that there is no proffer that AMI even knew about the EEOC complaint.

A key element of a retaliation claim is that the "defendants knew of the protected activity"—a person cannot retaliate based on an action they had no knowledge of.  Soloviev, 104 F. Supp. 3d at 250.  A retaliation claim should be dismissed when it fails to allege that the employer knew the employee engaged in a protected activity.  See, e.g., Jordan v. Forfeiture Support Assocs., 928 F. Supp. 2d 588, 609 (E.D.N.Y. 2013) (dismissing ADA retaliation claim where, among other reasons, the complaint did "not allege that defendant was aware of that protected activity or considered that protected activity in deciding to terminate plaintiff"); Watkins v. First Student, Inc., No. 17-CV-1519-CS, 2018 WL 1135480, at *15 (S.D.N.Y. Feb. 28, 2018) (plaintiff had "failed to state a plausible retaliation claim" under the NYSHRL because her complaint "fail[ed] to allege that Defendant knew of her EEOC complaint, and if so, when").

Here, Plaintiff asserts that the timing and context of her termination indicate that she was fired in retaliation for lodging an EEOC complaint, because she filed her EEOC

---

[7]     To the extent that Plaintiff raises retaliation claims against the AMI Defendants based on the conduct of DeNinno as described in this section, the claims are also dismissed for the reasons discussed above.

complaint against AMI on February 4, 2020, and she was fired on March 2, 2020.  However, Plaintiff does not specify *when*, if ever, she informed AMI about her EEOC complaint, or when AMI otherwise received notice of her EEOC complaint.  Absent an allegation that AMI knew about her EEOC complaint, Plaintiff's retaliation claim cannot be sustained.[8]  Accordingly, Plaintiff's retaliation claims against the AMI Defendants under Title VII, the ADA, the NYSHRL, and the NYCHRL (as asserted in Counts 2, 4, 6 and 9) are dismissed without prejudice.

Aiding and Abetting

Plaintiff's next claim invokes the aiding and abetting provisions of the NYSHRL and NYCHRL, which "are susceptible to the same standard . . . as the language of the two laws is virtually identical."  Schanfield v. Sojitz Corp. of Am., 663 F. Supp. 2d 305, 344 (S.D.N.Y. 2009) (citation and quotation omitted).  Both make it unlawful "for any person to aid, abet, incite, compel, or coerce" another person in the commission of an unlawful discriminatory act. N.Y. Exec. Law. § 296(6); N.Y. City Admin. Code § 8-107(6).  Under these laws, "employees who are not shown to have any power to do more than carry out personnel decisions made by others, but who actually participate in discriminatory conduct, can still be held liable."  Reid v. Ingerman Smith LLP, 876 F. Supp. 2d 176, 186 (E.D.N.Y. 2012).

Plaintiff brings these aiding and abetting claims against all Defendants, but does not explain in her pleadings who allegedly aided whom or in what conduct.  Defendant DeNinno

---

[8]     The AMI Defendants state in their Motion to Dismiss that the company "did not receive Plaintiff's EEOC Charge until May 6, 2020, over two months after Plaintiff was terminated."  (Docket entry no. 25 at 18.)  The Court cannot consider factual assertions raised by a defendant at the motion to dismiss stage.

contends that this claim should be dismissed because: (1) an aiding and abetting theory is only viable when an underlying violation has occurred (and Plaintiff has made no such showing as to DeNinno); and (2) as a matter of law, an individual cannot aid and abet in her own conduct. Both points are well taken.  First, as explained above, Plaintiff has failed to allege plausibly any claim of unlawful discrimination by DeNinno.  Second, even if an underlying violation were present, courts interpreting these statutes have consistently held that an individual cannot aid and abet her own conduct.  See, e.g., Bliss v. MXK Rest. Corp., 220 F. Supp. 3d 419, 426 (S.D.N.Y. 2016) ("[A]n individual cannot aid or abet his or her own violation of the Human Rights Law.") (quoting Hardwick v. Auriemma, 983 N.Y.S.2d 509, 513 (App. Div. 2014)); Boyce v. Weber, No. 19-CV-3825-JMF, 2020 WL 5209526, at *2 (S.D.N.Y. Sept. 1, 2020) ("Put simply, it is oxymoronic to say that an individual defendant can aid and abet his own primary conduct.").

The AMI Defendants similarly argue that this claim must be dismissed as a matter of law, as even corporate defendants cannot aid and abet their own conduct.  The AMI Defendants are correct that "there can be no aider-and-abettor liability as to [] corporate defendants for aiding and abetting their own conduct."  Malena v. Victoria's Secret Direct, LLC, 886 F. Supp. 2d 349, 368 (S.D.N.Y. 2012).  Thus, to the extent that Plaintiff claims that any Defendant has aided or abetted in his, her, or its own conduct, these claims are dismissed as a matter of law.

To the extent Plaintiff asserts that one defendant aided in unlawful discrimination by another defendant, such claims are dismissed because, as explained above, Plaintiff has not plausibly pled any underlying violations of discrimination law by any defendant.  See Petrisch v. HSBC Bank USA, Inc., No. 07-CV-3303-KAM-JMA, 2013 WL 1316712, at *21 (E.D.N.Y. Mar. 28, 2013) ("Importantly, aiding and abetting is only a viable theory where an underlying

violation has taken place.") (quotation omitted); <u>Nicholson v. Staffing Auth.</u>, No. 10–CV–2332, 2011 WL 344101, at *2 (S.D.N.Y. Feb. 1, 2011) ("A predicate requirement of aider-and-abettor liability is a finding of primary liability as to the employer."). Accordingly, this category of claims (as asserted in Counts 7 and 10) is dismissed with leave to move to replead.

<u>Discriminatory Interference</u>

Plaintiff's next claim involves section 8-107(19) of the NYCHRL, which makes it unlawful "for any person to coerce, intimidate, threaten or interfere with . . . any person in the exercise or enjoyment of . . . any right granted or protected pursuant to [§ 8-107]." N.Y. City Admin. Code § 8-107(19). "Threats are required to state a claim for violation of Admin Code § 8-107(19)." <u>Sletten v. LiquidHub, Inc.</u>, No. 13-CIV-1146-NRB, 2014 WL 3388866, at *5 (S.D.N.Y. July 11, 2014) (citation omitted). A "threat" has been defined by the Second Circuit as "an expression of an intention to inflict pain, injury, evil, or punishment." <u>United States v. Davila</u>, 461 F.3d 298, 302 (2d Cir. 2006). A claim for discriminatory interference should be dismissed when the Complaint fails to allege that any threats were made against the Plaintiff. <u>See, e.g.</u>, <u>Nieblas-Love</u>, 165 F. Supp. 3d at 78 (dismissing section 8-107(19) claim because "Plaintiff does not allege that [any of his supervisors] ever made any threats against him").

Both DeNinno and the AMI Defendants move to dismiss this claim, contending that Plaintiff does not provide any explanation of the factual basis of this claim, and that Plaintiff makes no allegations that any of the Defendants ever threatened her. The Court likewise concludes that Plaintiff has not alleged any facts that could plausibly demonstrate a violation of section 8-107(19), in that she does not allege she was ever threatened by anyone. Count 11 is dismissed with leave to move to replead.

Vicarious Liability

Plaintiff's next claim invokes the NYCHRL's vicarious liability provisions.  This

section provides that "an employer shall be liable for an unlawful discriminatory practice based

upon the conduct of an employee or agent which is in violation of any provision of this section."

N.Y. City Admin. Code § 8-107(13)(a).  This section "imposes liability on the employer in three

instances:"

> (1) where the offending employee exercised managerial or
> supervisory responsibility []; (2) where the employer knew of the
> offending employee's unlawful discriminatory conduct and
> acquiesced in it or failed to take immediate and appropriate
> corrective action; and (3) where the employer should have known of
> the offending employee's unlawful discriminatory conduct yet
> failed to . . . prevent it.

Zakrzewska v. New Sch., 14 N.Y.3d 469, 479 (2010) (citation and quotations omitted).

Plaintiff asserts that all Defendants have violated this section.  DeNinno argues

that this claim should be dismissed as against her because it is inapplicable as a matter of law, as

she was not Plaintiff's employer.  The Court concludes that this section is inapplicable.

Although the NYCHRL does not define "employer," courts in the Second Circuit have

commonly looked to the NYSHRL for definitions in this context.  "To determine whether a

defendant is an 'employer' within the meaning of the NYSHRL, the Court examines whether the

alleged employer: (1) had the power to hire employees; (2) made the payment of salary or wages

to the employee; (3) had the power of dismissal over the employee; and (4) had the power to

control the employee's conduct."  White v. Pacifica Found., 973 F. Supp. 2d 363, 375 (S.D.N.Y.

2013).  Plaintiff here has not plead facts showing that DeNinno had any authority over Plaintiff's

hiring, wages, or dismissal.  Thus, as a matter of law DeNinno cannot qualify as Plaintiff's

"employer" under section 8-107(13)(a), and the vicarious liability claim (as asserted in Count 12) is dismissed with leave to move to replead as to Defendant DeNinno.

As for the AMI Defendants, although they proffer no arguments regarding the applicability of section 8-107(13)(a), vicarious liability is not available here because there is no plausibly pled underlying violation of discrimination law.  See Oliver v. City of New York, No. 19-CV-11219-PGG-JLC, 2022 WL 455851, at *30 (S.D.N.Y. Feb. 15, 2022) (claims for "supervisory liability" under section 8-107(13)(a) should be dismissed when the plaintiff "fail[s] to plead an underlying violation").  Accordingly, the vicarious liability claims (as asserted in Count 12) are dismissed with leave to move to replead as to the AMI Defendants.


Wage Notice

Plaintiff's final claim arises under the New York Wage Theft Prevention Act, which requires, in relevant part, that every employer "provide his or her employees . . . at the time of hiring, a notice containing" accurate information regarding the employee's wages (such as the rate of pay, pay dates, hourly or salaried status, etc.).  NYLL § 195(1)(a).  The Act also provides an associated private cause of action for employees, providing that

> If any employee is not provided within ten business days of his or her first day of employment a notice as required by [§ 195] of this article, he or she may recover in a civil action damages of fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees.

NYLL § 198(1-b).

Plaintiff's Complaint simply states that AMI is an employer within the meaning of the NYLL, and that AMI failed to furnish her with a wage notice at the time of her hire in January 2019 which "accurately contained all of the criteria that the NYLL requires."  (Compl. ¶

109.)  The AMI Defendants do not dispute that the company was subject to this law, but contend that this claim must be dismissed because it is too conclusory.  The Court concludes that, as currently pled, the Complaint does not contain sufficient factual information to support a claim under this section, as Plaintiff does not explain whether (1) she *was* furnished with a wage notice, but the document she received did not contain the proper information; or (2) she *was not* furnished with a wage notice at all upon her hiring.  Accordingly, Count 13 is dismissed with leave to move to replead.

<u>CONCLUSION</u>

For the foregoing reasons, all of Plaintiff's state law tort claims against defendant DeNinno (as asserted in Counts 14-17) are dismissed for lack of subject matter jurisdiction, without prejudice to litigation in a forum of competent jurisdiction.  Each of Plaintiff's remaining claims (as asserted in Counts 1-13) is dismissed for failure to state a claim upon which relief may be granted.  Plaintiff may, however, file a motion for leave to file an amended complaint that is compliant with the pleading standards discussed above.[9]  Any such motion must comply with the applicable federal and local rules of motion practice and include Plaintiff's proposed Amended Complaint, as well as a redline comparing that pleading to Plaintiff's original Complaint.  Should Plaintiff fail to file a motion for leave to amend within 21 days of the entry of this Memorandum Opinion and Order, Counts 1-13 will be dismissed with prejudice.

---

[9]  "Generally, the first time a court dismisses a complaint for failure to state a claim, it does so without prejudice, particularly if it is conceivable that the Plaintiff may be able to articulate facts that would state a plausible claim."  <u>Schenk v. Verizon</u>, No. 10-CIV-6281-GBD, 2011 WL 6778284, at *3 (S.D.N.Y. Dec. 20, 2011).

This Memorandum Opinion and Order resolves docket entries no. 24 and 28.

SO ORDERED.

Dated: New York, New York
       January 20, 2023

 /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge